# EXHIBIT B



**LEGAL LANGUAGE SERVICES**

*A Division of ALS International, Inc.*
8014 State Line Road
Suite 110
Leawood, KS 66208

Telephone  (913) 341-3167
Toll Free    (800) 755-5775
Telefax      (913) 341-3168
www.legallanguage.com

October 6, 2021

To whom it may concern:

This is to certify that the attached transcription of English audio recording is an accurate representation from the media received by this office.  This transcription is designated as:

### August 27, 2021 Hearing Recording

Maria Victoria Portuguez, manager with this company, certifies that Curtis Field, who performed this transcription, is fluent in standard North American English and is qualified to transcribe.

She attests to the following:

"To the best of my knowledge, the accompanying text is a true, full and accurate transcription of the specified audio recording".

Signature of Maria Victoria Portuguez

Subscribed and sworn to before me this October 6, 2021.

Thomas R. McLean
Notary Public, State of Kansas
Qualified in Johnson County
My commission expires July 31, 2022

Sincerely,

Victor J. Hertz
President & CEO

**LEGAL LANGUAGE SERVICES**

**TRANSCRIPTION OF AUDIO**

**DESIGNATED AS: August 27, 2021 Hearing Recording**

**LEGAL LANGUAGE JOB #: 808837**

| Crystal Dallier: | 00:04 | Good morning everyone. My name is [Crystal Dallier]. I am a FINRA case administrator. Today is August 27th, 2021. We are here on case ID number 21-00392. It's Adam Gross versus HSBC Securities, USA Inc. Claimant's counsel, could you please introduce yourself and your client? |
|---|---|---|
| Daniel Kaiser: | 00:39 | Uh, Daniel [UI – audio cut off] of Kaiser, Saurborn & Mair. Representing the claimant, Adam Gross. |
| Crystal Dallier: | 00:47 | And for the record, Mr. Gross is present today. |
| Adam Gross: | 00:50 | Yes. |
| Daniel Kaiser: | 00:50 | [UI – audio muffled] |
| Crystal Dallier: | 00:53 | Respondent's counsel, may you please introduce yourself? |
| Ira Rosenstein: | 00:57 | This is Ira [Rosenstein] for respondent. And also representing respondent is [Joanne Wilcomb], who is not presently on the call, but may join later. |
| Crystal Dallier: | 01:06 | Thank you. Our panel today is Mr. Peter [Gillespie], he is our chairperson, Joseph Kelly, and David [Weisenfeld]. Mr. Gillespie, I will now turn over to you. |
| Peter Gillespie: | 01:24 | Thank you. Um, just a, a little housekeeping. I have no disclosures to add beyond what's on the record. Uh, Mr. Kelly, how about you? |
| Joseph Kelly: | 01:38 | No, I have no disclosures to add either. |
| Peter Gillespie: | 01:41 | Uh, Mr. Weisenfeld? |
| David Weisenfeld: | 01:42 | I have no further disclosures. |

| | | |
|---|---|---|
| Peter Gillespie: | 01:44 | Uh, and number two, uh, for the parties at the uh, initial pre-hearing conference, we discussed that Mr. Kelly would appear today by audio only, no video. Uh, that was agreeable at the time. Is that still agreeable to the claimant? |
| Daniel Kaiser: | 02:03 | Uh, it is. |
| Peter Gillespie: | 02:04 | To the respondent? |
| Ira Rosenstein: | 02:05 | Yes. |
| Peter Gillespie: | 02:07 | All right. And uh, is there any uh, objection? Do you accept the uh, panel as it's been constituted uh, for the claimant? |
| Daniel Kaiser: | 02:15 | No. There is no objection. |
| Peter Gillespie: | 02:18 | Thank you. And for the respondent? |
| Ira Rosenstein: | 02:20 | I got nervous there. Uh, yes, we accept the panel. |
| Peter Gillespie: | 02:24 | Uh, Mr. Rosenstein, you weren't nearly as nervous as I was for a moment. Um, all right. Uh, the parties have been introduced on the record. Uh, the arbitrators have submitted their oaths. Uh, Ms. Dallier has uh, properly characterized the hearing. Uh, Mr. Kaiser, my understanding uh, today is that this is uh, primarily, if not exclusively, uh, an expungement request. Is that correct? |
| Daniel Kaiser: | 03:01 | That is correct. |
| Peter Gillespie: | 03:02 | Okay. I think we've earlier covered this, but I'd note again for the record, uh, that there's been no service on any individual uh, customer. Would you, again, uh, if you don't mind, explain for the record why that is? |

| | | |
|---|---|---|
| Daniel Kaiser: | 03:20 | Well there, there's no customer involvement as far as I know in, in, in what we're dealing with here today. It's expunging the reasons for his termination uh, which we believe to be falsely reflected U5. That is the, you know, exclusive scope of this proceeding. |
| Peter Gillespie: | 03:37 | And the termination, if my recollection is correct, arose from an internal investigation uh, which did not directly involve any customer complaint. Is that also true? |
| Daniel Kaiser: | 03:47 | That is, that is correct, yes. As far as I know, yes. |
| Peter Gillespie: | 03:51 | Uh, Mr. [Rosenfeld] do we have it uh, correct? |
| Ira Rosenstein: | 03:54 | Uh, uh, yeah. Rosen—it's Rosenstein, but yes. |
| Peter Gillespie: | 03:57 | I'm sorry, Rosenstein. |
| Ira Rosenstein: | 03:59 | That's okay. |
| Peter Gillespie: | 03:59 | I beg your, I beg your pardon. |
| Ira Rosenstein: | 04:01 | No, no, no problem. |
| Peter Gillespie: | 04:02 | Uh, but it is correct, is it? |
| Ira Rosenstein: | 04:04 | Yes. This is a um, employment um, expungement um, type of case. Not, not customer related. |
| Peter Gillespie: | 04:12 | All right. Uh, I have uh, arbitrator's exhibit number one uh, which are the pleadings the panel has received. Uh, we have the submission agreement and claim from the claimant uh, both filed on the portal on May 4, uh, 2021. Although they may have been uh, signed earlier. And we have the statement of answer |

from the respondent filed on the portal on May 4, 2021. And

the respondent submission agreement submitted to the portal

on May 25. Are there any other pleadings in this manner, which

I have not mentioned? Mr. Claimant?

| Daniel Kaiser: | 04:52 | Uh, no. Not that I'm aware. |
| Peter Gillespie: | 04:54 | Uh, okay. And uh, Mr. Rosenstein, that correct? |
| Ira Rosenstein: | 05:00 | That is correct. |
| Peter Gillespie: | 05:04 | Any objection to the admission of exhibit one? |
| Ira Rosenstein: | 05:07 | No objection… |
| Daniel Kaiser: | 05:08 | No. |
| Ira Rosenstein: | 05:08 | …from respondent. |
| Peter Gillespie: | 05:09 | Okay. |
| Daniel Kaiser: | 05:09 | No objection from claimant. |
| Peter Gillespie: | 05:12 | Um, Mr. Kaiser, would you like to do a brief opening statement? |
| Daniel Kaiser: | 05:19 | Uh it'll—yes, very brief. Uh, just to sort of, set things as to |

what's gonna be, hopefully accomplished today. Uh, as you, as

you noted uh, Chairman, this is a, a hearing to, to that, that is

directed solely for the purpose of, of an expungement that um,

claimant believes he's entitled to. Um, the, it is his, it is his

belief, and he maintains that the U5 that was filed um, in

connection with his UBS—I'm sorry, with his HSBC employment

is um, is false. Um, it reflects false reasons for his termination

um, and the facts surrounding that. Um, as, as I think you know,

the, in the context of a global settlement um, the firm has agreed not to contest this expungement hearing. Um, one of the two exhibits we will offer today is, is the settlement agreement that reflects that agreement. Um, our intention is to provide some general background, factual background um, as to what occurred in the context of his termination, so that the panel has, has, has a, has at least some uh, full factual context for what occurred when, when making its expungement decision on that. That evidence will be provided through Adam Gross uh, the claimant. There will be no other witnesses that, that we will call uh, at this hearing. Um, and again, the two, two exhibits that we will provide [UI – muffled audio] agreement and the U5 itself, so the panel can, can review what the U5 currently, currently reflects. Um, and how we believe um, it should be changed. So um, with that um, I would, when the panel is ready, we'll, we'll have uh, Mr. Gross testify to you um, about what he knows about these issues.

| Peter Gillespie: | 07:24 | Uh, Mr. Kaiser just so that I'm clear, um, my general understanding is that we can, if we feel it is warranted, expunge uh, something from a U5. I'm not at all clear that we can substitute anything in its place. Um, so just when you get to your claim for relief, uh, I'd like you to tell me exactly what you would like the panel to do uh, without saying… |

Daniel Kaiser:       07:56        Sure.

Peter Gillespie:     07:57        …whether we'll do it or not. Uh, the other…

Daniel Kaiser:       07:59        Right, right.

Peter Gillespie:     08:00        …thing, I think um, if my recollection is correct, your pleadings mentioned an occurrence number or numbers. Uh, make it easy for us today, as you go through the hearing, if you would restate those at, at some point. There's no necessary time to do it.

Daniel Kaiser:       08:14        And you're referring to the, the places in the U5 that need, that we would believe need expunging. Is that what you're referring to?

Peter Gillespie:     08:23        And the occurrence number giving rise to those issues.

Daniel Kaiser:       08:28        Okay. I'm, I'm, I'm not sure what you're referring to as occurrence number. You're talking about something that is referred to specifically in the U5?

Peter Gillespie:     08:37        Uh, I, I'll be honest with you, I don't know where they're reflected.

Daniel Kaiser:       08:41        Okay well we'll, we'll have to…

Peter Gillespie:     08:42        But uh…

Daniel Kaiser:       08:42        …dig…

Peter Gillespie:     08:42        But, but what I, what I do know is, FINRA requires me to list them in the, in any order. So…

Daniel Kaiser:       08:49        Okay. Uh…

| | | |
|---|---|---|
| Peter Gillespie: | 08:50 | …we'll work, we'll work that out. If uh, if we have to, we'll take a break and I'll get a better definition for you. |
| Daniel Kaiser: | 08:56 | Okay. |
| Peter Gillespie: | 08:57 | Okay. |
| Daniel Kaiser: | 08:57 | Sure. |
| Peter Gillespie: | 08:58 | Um, Mr. Rosenstein uh, do you have anything you wish to say at this time? |
| Ira Rosenstein: | 09:05 | No, uh, I think Mr. Kaiser did describe the circumstances accurately. Uh, uh, we're, we're, it's an uh, expungement case uh, there's no claim for damages, and um, uh, we, we are um, not presenting any um, uh, any witnesses um, uh, or opposing uh, you know, the, the, the request. Um, we'll, we'll leave it to the panel's discretion. |
| Peter Gillespie: | 09:32 | All right. And uh, before we proceed with evidence and documents, uh, do either of my co-panelists have any questions for the parties at this moment? Uh, Mr. Kelly? |
| Joseph Kelly: | 09:46 | No, I do not. |
| Peter Gillespie: | 09:47 | Uh, Mr. Weisenfeld? |
| David Weisenfeld: | 09:49 | Not at this time, no. |
| Peter Gillespie: | 09:51 | Okay. Um, Mr. Kaiser? Uh, I guess you may proceed. |
| Daniel Kaiser: | 09:58 | Thanks, thank you. Thank you, Chairman. Uh, Mr. Gross, how are you this morning? |
| Adam Gross: | 10:04 | I'm well, thank you. |

| Daniel Kaiser: | 10:05 | Okay. |
|---|---|---|
| Peter Gillespie: | 10:05 | Would you like me to swear him? |
| Daniel Kaiser: | 10:07 | Oh yeah, that would be, that would be a good idea. |
| Peter Gillespie: | 10:10 | That's alright. You, this morning is the day that you forgot before I did, it's okay. Uh, Mr. Gross, would you raise your right hand? Uh, do you swear that all the testimony you give will be true and accurate? |
| Adam Gross: | 10:22 | Yes, I do. |
| Peter Gillespie: | 10:23 | You may proceed. |
| Daniel Kaiser: | 10:26 | Uh, Mr. Gross, can you very generally uh, describe your education and employment background uh, prior to joining HSBC? |
| Adam Gross: | 10:35 | Sure. Uh, first of all, Mr. Kelly, Mr. Weisenfeld, Mr. Gillespie, Ms. uh, Dallier, thank you uh, for the time this morning. Um, my uh, my education started at uh, the University of Rochester. I graduated in 1992 with a dual degree in history and political science. Um, I subsequently worked for two years um, at uh, a law firm, Weil, Gotshal & Manges as a paralegal um, and realized um, I did not want to practice law. And um, uh, found an opportunity uh, to work on Wall Street at JP Morgan where I spent close to twenty years uh, of my career. The majority of the career at JP Morgan had been in the private bank, moving from uh, associate to vice president, and ultimately to managing |

director. Um, I helped create one of the most um, uh, profitable uh, and well-known groups within the private bank at JP Morgan. Um, and uh, decided on my own volition to, to leave in 2014 and move away from the client coverage uh, experience into a more managerial role at Citigroup, um, where I joined um, at some point in the early part of 2014. Um, I was a managing director uh, immediately upon hire at Citigroup um, in their private bank, covering the US and Latin America um, capital markets uh, as well as a sales team. And um, I stayed at Citigroup until about 2017, middle of 2017 when I uh, when I left under uh, restructuring of senior, senior management.

| Daniel Kaiser: | 12:24 | Uh, when were you hired by HSBC? |
| Adam Gross: | 12:28 | Um, I was hired in February of 2018 uh, by HSBC. |
| Daniel Kaiser: | 12:35 | Okay. And into what position? |
| David Weisenfeld: | 12:35 | Mr., Mr. Kaiser, before you go forward, let me just put something further on the record. Um, my disclosure makes clear that I have um, a financial arrangement with uh, JP Morgan Chase Bank and uh, JP Morgan Securities. Um, what's not specifically on my disclosure is that I am a private bank client of, of the bank. Um, I have been since prior to 2014, but have had absolutely no contact with Mr. Gross during the time that he was at Chase. |

| Peter Gillespie: | 13:19 | Thank you Mr. Weisenfeld. Uh, does that uh, change, change the view of the claimant as to Mr. Weisenfeld's acceptability on the panel? |
| Daniel Kaiser: | 13:27 | No, it does not. |
| Peter Gillespie: | 13:29 | Or for the respondent? |
| Ira Rosenstein: | 13:30 | No, it does not. Um, uh... |
| Peter Gillespie: | 13:32 | Okay. |
| Joseph Kelly: | 13:33 | Uh, Mr. Gillespie? |
| Peter Gillespie: | 13:36 | Yes, Mr. Kelly. |
| Joseph Kelly: | 13:37 | Yeah, um, I should add that 1992, I retired from Chase Manhattan, which is now part of JP Morgan. And, I have uh, banking accounts with JP Morgan Chase, so... |
| Peter Gillespie: | 13:55 | Did you have any contact with the claimant, Mr. Gross? |
| Adam Gross: | 13:59 | Are, are you asking me? |
| Joseph Kelly: | 14:01 | No. |
| Peter Gillespie: | 14:01 | Uh, no, Mr. Kelly. |
| Adam Gross: | 14:03 | Okay. |
| Joseph Kelly: | 14:03 | Uh, no, no I have not. |
| Peter Gillespie: | 14:05 | All right. Does Mr. Kelly's amended disclosure uh, uh, cause any party to reconsider its acceptance of the panel? For the claimant? |
| Daniel Kaiser: | 14:15 | No, it does not. |
| Peter Gillespie: | 14:16 | For the respondent? |

| | | |
|---|---|---|
| Ira Rosenstein: | 14:17 | No. |
| Peter Gillespie: | 14:18 | All right. To my co-panelists, thank you. Uh, I appreciate your thoroughness. Uh, Mr. Kaiser, if you'd like to continue. |
| Daniel Kaiser: | 14:25 | Thank, thank you, Chairman. Um, sir, in what position were you hired by HSBC? |
| Adam Gross: | 14:30 | Uh, thank you. I was hired as a managing director um, in, in the private bank for the US and Latin America, and um, I was head of uh, investment counselors and uh, product specialists. |
| Daniel Kaiser: | 14:47 | And, and generally, what were your job responsibilities? |
| Adam Gross: | 14:50 | Um, I, I was responsible for um, hiring and also restructuring people. Um, so I had responsibility of, could've been over twenty people, close to 30 people. Um, um, both on the investment counselor sale side, so uh, teaching, mentoring, um, and planning strategy um, as well as the product side, which included investment products, deposits, um, um, and uh, yeah I think that's, that's about it. |
| Daniel Kaiser: | 15:29 | And just, just from a 30,000 feet, 'cause I'm getting into too much detail uh, Mr. [UI – audio cut off]. What were some of your, just high level accomplishments at [the bank]? |
| Adam Gross: | 15:41 | Um, I um, a few things, a number of things. Uh, one, uh, I, I diversified our, our, our teams. Uh, there were uh, when I came in, I was asked to restructure people um, you know, for talent. Um, I noticed that there were some um, uh, diversity issues as |

well. Um, this was, you know, early 2018. Um, we, I hired people that resulted in 35 percent uh, female group—uh salespeople and, and product specialists from close to zero. Um, and this was kind of before the diversity inclusion barrage that has come into, into the marketplace. Uh, I was very pleased with, with, with the hirings and the people I hired. I conceived, number two, I conceived um, a very successful equity strategy um, that to my knowledge um, has done, has raised more capital than anything the private bank in the US had done uh, in the prior ten to twelve years. Um, I was very active in mentoring summer grads um, our newly hired graduates out of undergrad school, and restructured the summer programs, the graduate programs, so this, so the new folks and the summer interns would, would have a much better and more educational experience. Um, I was part of multiple diversity groups. In fact, uh, I was a featured speaker uh, and an ambassador for Balance, which is the firm's women's organization, of which men can also be part of. Um, I was singled out by the new head of the global private bank, upon his arrival in his first town hall um, for being a proponent, an advocate, an, an initiator of transformation and change. Um, I was very vocal about um, uh, some of our [UI] policies that I felt would um, uh, be detrimental to US regulations. And I also, I would finally say uh, I

was a leading, if not the person to uh, help open up the

architecture for our structure product program. So uh, I'll pause

there. If there are any other, if you'd like to hear anything more,

I'd be happy to share more.

Daniel Kaiser:      18:19      Uh, who did you report to [UI – audio cut off] you were there?

Adam Gross:      18:22      Um, I reported to, upon my arrival, a gentleman named [Russell

Scofield Bazer] um, who came from London. Um, I, upon his

departure within maybe a year and a half, um, I reported

directly to our CEO of the US private bank, Joseph [Abruzzo].

Upon his departure um, I reported directly into the Global

head—I'm sorry, the uh, the US head of all retail and wealth

management, Pablo Sanchez, until he appointed uh, someone in

between him, who was uh, a gentleman named Mark [Pitzy]. So

I've had a number of, of direct reports um, within the two and a

half years there.

Daniel Kaiser:      19:14      Now did there come a time during your HSBC employment

when you were made the subject of an investigation at HSBC?

Adam Gross:      19:21      Uh, yes. Uh, probably it was late August um, in 2020 uh, when I

did receive a call um, from I believe Employee Relations. Um,

there were other people on the phone, three additional people,

total of four um, that uh, start, that questioned, start, began to

question me um, about a particular situation.

| Daniel Kaiser: | 19:48 | And, and what was, generally, what was the nature of that investigation? |
| Adam Gross: | 19:51 | Sure. I was asked if I had a WeChat conversation with a woman named Ms. uh, [Cindy Q. Key] um, and if I had, about introducing her to a hedge fund manager not affiliated with HSBC. |
| Daniel Kaiser: | 20:09 | And what were you being, so, what, what was the nature of those charges? What were they accusing you of, of, of doing? |
| Adam Gross: | 20:18 | Um, they, they, they accused me of using uh, WeChat, which is um, I'm not even sure if its unauthorized by the firm, but um, to communicate with uh, with a client. And I would add um, Ms. Key was not a client of the firm um, nor was she an active prospect. |
| Daniel Kaiser: | 20:43 | So, so were, were these charges, as you understood them, were they true? |
| Adam Gross: | 20:47 | Absolutely not. |
| Daniel Kaiser: | 20:49 | Explain that. Why were they not true? |
| Adam Gross: | 20:52 | I'm very familiar with the rules of utilizing uh, uh, chat, chats and, and WeChats and texts, and communicating business with clients. Um, in fact, I was very clear about this, this person was not a client um, uh, wasn't a prospect. And she made it clear in our first initial uh, engagement, that she was very happy where she was and, and we would just be friends. Uh, so it was clear to |

me she was not a client. In fact, had I used an internal email to communicate with her, um, I felt that that would've been a violation of policy, and use for personal use.

Daniel Kaiser:  21:38  Well in addition, well in addition to her not being a client, were you, were you in any event soliciting new business from her?

Adam Gross:  21:45  Oh, absolutely not. I mean part of, part of what I've done for my entire career is network. And um, it was clearly um, just an, an opportunity to uh, make an introduction. Um, I had no intentions of soliciting her. I don't know what her goals and objectives are, but I do know that it would've been an interesting introduction to one of a couple of people um, for her, and to help her branch out her network. Um, I've spent my entire career meeting people um, and networking, and um, this was clearly um, all that was.

Daniel Kaiser:  22:22  Okay. Uh, and so what do you believe motivated the investigation?

Adam Gross:  22:28  Um, you know, I think it's, it's, it's a few things. I think I had um, I think it was retaliation. Um, I think that the firm um, I, I had some issues with um, the way the firm was doing business that I thought was, was wrong. Um, and, and, and also, second, secondarily, I believe that um, I did not accept a um, a voluntary separation package that was offered to um, many, many um, employees um, as the firm was planning a massive

restructuring. And I felt that this was a way for them to not have to pay me severance, and also force me to lose my vest—uh, my unvested stock. Um, sitting on the executive management committees, which I neglected to mention before as part of my responsibility um, I was very familiar in, with, with our cost-cutting measures and what we needed to do. And the firm, the private bank in particular in the US, was looking for any way to cut any easy cost they can. Um, and it was clear to me that um, by doing this to me, um, by firing me for cause, uh, it would allow them to not have to pay me um, and, and force me to lose my uh, lose my unvested stock.

| Daniel Kaiser: | 23:50 | Now Mr. Gross, have you been, on any occasion, have you been disciplined by any governmental regulatory agency, at, at any level of government? |

| Adam Gross: | 23:59 | No. |

| Daniel Kaiser: | 23:59 | State, federal? |

| Adam Gross: | 24:00 | No. |

| Daniel Kaiser: | 24:02 | Have you at any time been disciplined by any employee for a regulatory violation of any kind? Federal, state, whatever? |

| Adam Gross: | 24:09 | Never in my career. |

| Daniel Kaiser: | 24:12 | Um... |

| Adam Gross: | 24:13 | No. |

| Daniel Kaiser: | 24:14 | ...so what, you, at some point you were terminated by HSBC? |

| | | |
|---|---|---|
| Adam Gross: | 24:18 | Uh, yes I was. |
| Daniel Kaiser: | 24:20 | And when was that? |
| Adam Gross: | 24:21 | Um, technically uh, they terminated me maybe three days after the investigation, September 1st, something like that. Um, according to my records um, officially I, I was terminated on September 20th, was my last official day as an HSBC employee. |
| Daniel Kaiser: | 24:42 | Were you terminated for any conduct that would constitute just cause? |
| Adam Gross: | 24:46 | Absolutely not. |
| Daniel Kaiser: | 24:48 | So, can you explain that? |
| Adam Gross: | 24:50 | Well I think I, I think I explained the situation a, you know, a few minutes ago. Uh, it, it, should I repeat that? |
| Daniel Kaiser: | 25:00 | Meaning that, she wasn't your client, and… |
| Adam Gross: | 25:02 | Oh, I'm sorry. Uh, yes. She was not a client, um, she was not a prospect, and I, I, I did nothing to violate any internal policy um, or regulatory policy. Accepted no money, um, there was, there was nothing there. It's, it's a, uh, a baseless claim. |
| Daniel Kaiser: | 25:27 | Um, now did you, through counsel, assert legal claims against HSBC? |
| Adam Gross: | 25:34 | Uh, yes I did. |
| Daniel Kaiser: | 25:36 | And did you reach a settlement with HSBC? |
| Adam Gross: | 25:43 | Yes, I did. |

| Daniel Kaiser: | 25:45 | And I, I don't know if the panel is now um, have a copy of, of, there's only two exhibits. Exhibit one is the settlement agreement with, with HSBC. Um, and does the panel have that in front of, in front of it? |
| Peter Gillespie: | 25:59 | Uh, Mr… |
| Joseph Kelly: | 25:59 | I have… |
| Peter Gillespie: | 26:01 | Mr. Kaiser? Could you give me a moment? They should be sitting on my printer. I have to retrieve them. And we'll give… |
| Daniel Kaiser: | 26:08 | Okay. |
| Peter Gillespie: | 26:08 | …uh, each of my co-panelists the same courtesy. I'll be back in one moment. Uh, Mr. Kelly are you with us? |
| Joseph Kelly: | 26:43 | I'm here, and I do have the two exhibits. |
| Peter Gillespie: | 26:46 | All right, and Mr. Weisenfeld? |
| David Weisenfeld: | 26:48 | I have them as well. |
| Peter Gillespie: | 26:50 | All right. Mr. Kaiser? |
| Daniel Kaiser: | 26:52 | Uh, thank you. |
| Peter Gillespie: | 26:53 | Continue. |
| Daniel Kaiser: | 26:54 | Um, so do you recognize exhibit one, Mr. Gross? |
| Adam Gross: | 26:58 | Yes, I do. |
| Daniel Kaiser: | 27:01 | And what is it? |
| Adam Gross: | 27:02 | Um, it is our settlement agreement with HSBC. |

| Daniel Kaiser: | 27:07 | Now does the settlement agreement with HSBC, is there, is there a promise within that agreement that HSBC makes to you, not to contest your expungement? |
| Adam Gross: | 27:18 | Uh, yes there is. |
| Daniel Kaiser: | 27:20 | Okay. And is that on paragraph eleven on page four of this agreement? |
| Adam Gross: | 27:26 | I believe it is. |
| Daniel Kaiser: | 27:31 | Um, do you have the second uh, exhibit—I'm sorry. You, you duly executed this agreement, correct? |
| Adam Gross: | 27:39 | Uh, yes I did. |
| Daniel Kaiser: | 27:41 | As did HSBC? |
| Adam Gross: | 27:43 | Yes. |
| Daniel Kaiser: | 27:45 | Um, now, and, and this, and this agreement uh, was the comprehensive uh, resolution of your, of your, of your asserted legal claims, correct? |
| Adam Gross: | 27:57 | Yes. |
| Daniel Kaiser: | 27:58 | Okay. Can you look at exhibit two? |
| Peter Gillespie: | 28:01 | Uh, Mr. Kaiser? |
| Daniel Kaiser: | 28:02 | Yeah? Yes? |
| Peter Gillespie: | 28:03 | I'm, I'm sorry to interrupt. If you don't mind, I'd like to formally mark the settlement agreement as claimant's exhibit one. |
| Daniel Kaiser: | 28:11 | Yes, I, I apologize. Yes. |

| Peter Gillespie: | 28:13 | No, no, don't, don't apologize. You're fine. And I assume it's being offered, in which case absent any objection, it's received. |
| Ira Rosenstein: | 28:22 | No objection. |
| Peter Gillespie: | 28:25 | Go ahead, Mr. Kaiser. Sorry to interrupt you. |
| Daniel Kaiser: | 28:28 | Um, so uh, do you, do you have exhibit two before you, Mr. Gross? |
| Adam Gross: | 28:33 | Um, that would be the U5? |
| Daniel Kaiser: | 28:36 | Yes. |
| Adam Gross: | 28:37 | Yes. Um, I'm familiar with it, yes. |
| Daniel Kaiser: | 28:41 | And this is the U5 that relates to your uh, securities industry employment, correct? |
| Adam Gross: | 28:47 | Correct. |
| Daniel Kaiser: | 28:49 | Uh, and it reflects the reasons, at least the purported reasons for your termination from HSBC? |
| Adam Gross: | 28:56 | Correct. |
| Daniel Kaiser: | 28:58 | And does, does it reflect the true and accurate reasons for your termination? |
| Adam Gross: | 29:02 | No, it does not. |
| Daniel Kaiser: | 29:03 | Can, can you explain that to the panel? |
| Adam Gross: | 29:06 | Um, uh, sure. I think I, again, I think I've explained that earlier, that um, uh, this individual was, was not a client. Um, and I did not violate any internal policy by talking to a non-client. |

| | | |
|---|---|---|
| Daniel Kaiser: | 29:24 | And if you go to the section of the U5 that says, termination, and says [UI] you know, it's on, depending on how it prints out, could be on different pages um, of people's exhibits. But it, it has the reason for your termination, that section, that gives, violation of, of internal rules and practices. You see that? |
| Adam Gross: | 29:45 | I do. |
| Daniel Kaiser: | 29:47 | Um, and is, does that accurately reflect the reason for your termination? |
| Adam Gross: | 29:51 | No, it does not. It's wrong. |
| Daniel Kaiser: | 29:53 | And, and if you go to… |
| Adam Gross: | 29:54 | It's wrong. |
| Daniel Kaiser: | 29:56 | Yeah. And, and if you go to 7F1, section 7F1 of the U5… |
| Adam Gross: | 30:06 | Okay. |
| Daniel Kaiser: | 30:08 | …um, and you see where it says, yes, allegations of, of alleged regulatory violations? |
| Adam Gross: | 30:15 | Okay. |
| Daniel Kaiser: | 30:17 | Is that accurate? |
| Adam Gross: | 30:18 | Absolutely not. No. |
| Daniel Kaiser: | 30:23 | Um, and are, those are the two places in your U5 uh, that you believe reflect inaccurate information concerning your HSBC termination, correct? |
| Adam Gross: | 30:32 | That's correct. |

| Daniel Kaiser: | 30:34 | Um, and, and how do you believe your U5 should be changed, Mr. Gross? |
| Adam Gross: | 30:40 | Well, I, I, I, I believe it should be voluntary separation. Um, um, you know, to, to make a claim that is completely false uh, and, and be terminated for that with cause uh, I can't even say having termination without cause is warrant. It, it, it should be voluntary separation. |
| Daniel Kaiser: | 31:03 | Okay. Uh, has the false U5 that currently exists, the one that we've just looked at, has it interfered with your ability to attain new employment? |
| Adam Gross: | 31:14 | Yes, it's, it's been um, it's, it's, it's, it's a burden. Um, it's been very difficult to um, to engage effectively with, with other firms, and has been, yeah. |
| Daniel Kaiser: | 31:32 | Okay. What we would, we would offer exhibit two, I don't know if the U5 has to be formally introduced into evidence, but we would, we would offer it as an exhibit as well, as claimant's exhibit two. |
| Peter Gillespie: | 31:41 | Any objection into claimant's exhibit two? |
| Ira Rosenstein: | 31:44 | No objection. |
| Peter Gillespie: | 31:45 | It's received. |
| Daniel Kaiser: | 31:48 | Um, so just, just as a final question, Mr. Gross, do you believe that, that this panel, they're reviewing the evidence here, should, should expunge your U5 um, of that false information? |

| Adam Gross: | 32:07 | I do. |
|---|---|---|
| Daniel Kaiser: | 32:10 | Uh… |
| Adam Gross: | 32:11 | Emphatically. |
| Daniel Kaiser: | 32:11 | ...that's all, uh, that's all for me um, Chairman. Um, certainly if the panel has any questions for Mr. Gross, he's here to answer them. |
| Peter Gillespie: | 32:22 | Well, let's give Mr. Rosenstein his opportunity first, if he wants it. Uh, Mr. Rosenstein any, any questions from you? |
| Ira Rosenstein: | 32:30 | No questions for the witness. |
| Peter Gillespie: | 32:32 | Okay. Uh, Mr. Kelly, do you have any questions for the witness? |
| Joseph Kelly: | 32:36 | Uh, yes I do. Uh, Mr. Gross, during investigations, was it stated to you uh, how the firm discovered, or claim to discover that you were using WeChat, and that you had mentioned or texted about a hedge fund to uh, Nancy Q.—Cindy Q.? |
| Adam Gross: | 33:04 | Um, it was not specifically explained to me. I can um, absolutely deduce how it did come about. Um, um, but that would be my guess if, if, if you'd like to know that, but they didn't, they did not disclose um, how that came about. |
| Joseph Kelly: | 33:27 | The uh, did you ask them how it came about? |
| Adam Gross: | 33:32 | Um, no. Uh, I don't, honestly I don't recall if I specifically asked them. I, I knew pretty much exactly how it came about, again, which is my um, my view. Uh, and I, and if you'd like, I can expand on that. |

Joseph Kelly:          33:55          Yes, please.

Adam Gross:            33:57          One of, one of the private bankers um, her name is [Winnie

                                      Pang] um, who is a, a perennial underperformer um, had known

                                      this individual, Cindy Key, and in fact uh I believe had gone on a

                                      trip with this woman, as well as a client. Um, Cindy must have

                                      mentioned to Winnie that I had sent her a text, and um, um,

                                      and, and mentioned this in particular. And Cindy—I'm sorry—

                                      and Winnie had reported that to somebody in HR, or

                                      management, or I don't know who. And that is how uh, it

                                      probably uh, came to my attention, or it came to Employee

                                      Relations to come to me. And I believe um, uh, by, by, by

                                      Winnie reporting something like this, protects her from any

                                      retaliation of being terminated uh, and I do believe that there is

                                      a, a practice among people to utilize this strategy to protect

                                      themselves from being terminated. So, I, that is my under—that

                                      is my belief and, and, and my view on how that uh, how that

                                      was reported. There's no other way. They asked me for a copy

                                      of my, of the text, which I sent to them. So they couldn't have,

                                      there's no other way for them to have gotten that.

Joseph Kelly:          35:38          All right, thank you.

Adam Gross:            35:39          You're welcome.

Peter Gillespie:       35:43          Mr. Weisenfeld?

| David Weisenfeld: | 35:44 | Yes. Thank you. I'm gonna go on a slightly different direction, Mr. Gross. Um, you made reference to a voluntary separation package that you were offered… |
|---|---|---|
| Adam Gross: | 35:55 | Yes. |
| David Weisenfeld: | 35:56 | …one point? When was that? |
| Adam Gross: | 35:59 | Um, Mr. Weisenfeld, I, I, I, it was, it was announced in, I, I can't remember, it could've been June or July um, was when the announcement came. And I believe the final date for accepting this package was September 1st, or could've been August 30th. It was very close to when I was, when I was terminated. |
| David Weisenfeld: | 36:33 | Okay, when, when you say announced in June or July… |
| Adam Gross: | 36:39 | Yes. |
| David Weisenfeld: | 36:39 | …you talking about just a broad announcement that there would be packages, or… |
| Adam Gross: | 36:46 | Yes. |
| David Weisenfeld: | 36:46 | …what I'm get, what I'm getting at really is, were you ever presented with a specific package, or was it just concept based? |
| Adam Gross: | 36:55 | So, no, no, no. So uh, let me, let me, let me uh, let me finish the, answering your question. So there was a point in time, and I do not remember the exact date, where eligible employees for this voluntary separation package uh, we'll call it the VSP for… |
| David Weisenfeld: | 37:14 | Mhmm. |

| Adam Gross: | 37:14 | …purposes in this conversation um, were, um, emailed uh, notification that they were eligible. And it was all certain levels um, below my level, and then executives who were not client facing. So I fell into that category, I was um, I did have an email that actually spelled out the package that I would receive, with all of the details and all kinds of information. Um, so I was, and then subsequently um, as we were planning to restructure, Mark Pitzy uh, we were told in our executive uh, committee meeting, think about who would be uh, terminated um, and let, let us know. And I had one person um, that was on my list. And I was subsequently called by Mark Pitzy uh, and we weren't supposed to tell the individual um, and give them guidance. Technically, you're not allowed to give them guidance to take a package. Uh, Mark Pitzy had called me, and, and said uh, basically, you're on the list. Um, and I said, okay. Um, and you know, he, I had applied for, and was a final round candidate for his job that he got. Um, so I knew he wasn't gonna wanna keep me around. Um, so I can't exactly remember the exact date uh, Mr. Weisenfeld, but uh, I was officially notified along with a lot of other individuals, and then unofficially notified that uh, I would be, I, I would be cut. Is that, is that clear? |
| David Weisenfeld: | 39:16 | Yes. Uh, do you recall the terms of the package? 'Cause you said you got an email that laid it out. |

| | | |
|---|---|---|
| Adam Gross: | 39:25 | Um, it was, it was a, a, it was a standard severance package with a little bit of a booster, a little bit more. Um, but I can't recall off the top of my head the exact amount. Um, I would say uh, I, along with many others um, made the decision, in doing the math, to not accept it. Um, knowing the, the pace at which the firm moves to make changes um, and my ability to find another job um, while still working um, would've been much better. I figured I would stay and who knows? Um, knowing how dysfunctional the organization was around things, I, I thought maybe there'd be another opportunity for me to, to stay on or at least have time to find something else. Is that clear? |
| David Weisenfeld: | 40:30 | Yes. Thank you. |
| Adam Gross: | 40:31 | You're welcome. |
| Peter Gillespie: | 40:34 | Mr. Weisenfeld, do you have anything more? |
| David Weisenfeld: | 40:36 | No. Thank you, no. |
| Adam Gross: | 40:37 | So it was, it was a complete surprise… |
| Peter Gillespie: | 40:40 | Mr. Gross? There's no pending question, thank you. Uh, I have a couple of questions for you though, just to first follow up on uh, something Mr. Weisenfeld raised. Uh, would the VSP, as you call it, short form, have allowed you to keep uh, your vested shares? |
| Adam Gross: | 41:00 | Yes, it would have. |
| Peter Gillespie: | 41:02 | And… |
| Adam Gross: | 41:03 | Uh, um, unvested. |

| Peter Gillespie: | 41:04 | I'm sorry. So they would continue to vest as time went on, right? |
| Adam Gross: | 41:09 | Correct. |
| Peter Gillespie: | 41:10 | Yeah, sorry. Thank you. Uh, and would the economic benefit of the VSP to you have exceeded 375,000? The dollar benefit? |
| Adam Gross: | 41:26 | Um… |
| Peter Gillespie: | 41:28 | Just approximately. |
| Adam Gross: | 41:29 | …I, I, you know, Mr. Gillespie, I, I don't recall. Uh, I don't believe it would, however um, the legal fees clearly were significant. Uh, I, I don't recall 100 percent uh, if it would've. It may have been roughly the same. |
| Peter Gillespie: | 41:52 | Mhmm. Uh, did you ever uh, submit a letter of resignation? |
| Adam Gross: | 41:59 | Uh, I didn't have the chance to, no. |
| Peter Gillespie: | 42:02 | Did you ever tender a letter of resignation? |
| Adam Gross: | 42:06 | Uh, no. At, at, at HSBC? |
| Peter Gillespie: | 42:11 | I, I'm sorry, yes, that's the employer we're talking about. There, I take it there's no dispute, you did utilize eChat—or WeChat, excuse me—in speaking with uh, someone? |
| Adam Gross: | 42:29 | Oh I, I did. I did utilize WeChat. |
| Peter Gillespie: | 42:31 | Okay. |
| Adam Gross: | 42:31 | Um… |
| Peter Gillespie: | 42:32 | And your, your point is that she wasn't a customer, wasn't a prospective customer, it was a personal call? |

| Adam Gross: | 42:38 | Correct. |
| Peter Gillespie: | 42:39 | Okay. You mentioned a hedge fund during that conversation? |
| Adam Gross: | 42:45 | Yes. |
| Peter Gillespie: | 42:46 | Was that a hedge fund uh, for which HSBC might've invested client assets? |
| Adam Gross: | 42:53 | Uh, no it wasn't. |
| Peter Gillespie: | 42:55 | So HSBC did not use the hedge fund, didn't have access to the hedge fund that you mentioned? |
| Adam Gross: | 43:01 | Correct. And I was thinking about a hedge fund, not in specific. |
| Peter Gillespie: | 43:07 | Did you mention the name of a hedge fund? |
| Adam Gross: | 43:09 | I did not. |
| Peter Gillespie: | 43:18 | Uh, I have nothing further. Um, in light of the questions by the panel, did the parties have anything more for the witness? The claimant? |
| Daniel Kaiser: | 43:27 | I, I, I, I do not, Chairman. |
| Peter Gillespie: | 43:30 | Uh, and for the respondent? |
| Ira Rosenstein: | 43:33 | No respondent uh, relies on, on the information in its answer. |
| Peter Gillespie: | 43:36 | And Mr. Kelly, Mr. uh, Weisenfeld, do you have anything more? |
| Joseph Kelly: | 43:42 | I do not, no. |
| David Weisenfeld: | 43:44 | Neither do I. |
| Peter Gillespie: | 43:45 | Thank you, Mr. Gross. You're released. |
| Adam Gross: | 43:48 | Thank you very much for you time. Appreciate it. |
| Peter Gillespie: | 43:51 | Uh, Mr. Kaiser? What else do you have? |

| | | |
|---|---|---|
| Daniel Kaiser: | 43:54 | Um, that's it. Um, I, I, you know my, my, I conclude as, as where I began, which is that the, we believe that the U5 uh, reflects false information as consistent with the testimony you just heard. Um, it's been a huge burden on this claimant to have to deal with that U5 and continue his career. Um, as I'm sure the panel knows, uh, those kinds of statements in a U5 are, could be, could be career killers. Um, so um, you know, [UI – muffled audio] consider his testimony and what you've heard um, to expunge the U5 and let Mr. Gross get on the business of, of, of doing what he does without having to deal with, with uh, the, the false reason provided for his termination, so that's all we have. Um, if there are any further questions or any additional information the panel needs, I will be happy to provide it. |
| Peter Gillespie: | 44:52 | Uh, Mr. Rosenstein do you have anything further? |
| Ira Rosenstein: | 44:56 | I do not. |
| Peter Gillespie: | 44:57 | Uh, Mr. Kelly, do you have any questions for the parties before we release them? |
| Joseph Kelly: | 45:02 | No, I do not. |
| Peter Gillespie: | 45:03 | Uh, Mr. Weisenfeld? |
| David Weisenfeld: | 45:05 | Neither do I. |
| Peter Gillespie: | 45:07 | Well, I'm sorry to be the guy who always raises his hand after the class bell rings, but uh, Mr. Kaiser, uh, what specific relief are you requesting of the panel? |

| | | |
|---|---|---|
| Daniel Kaiser: | 45:23 | Well, that the reasons, you know, consistent with, you know, [UI – muffled audio] practice when there is false information in the U5, that the false information be expunged so that the reason specifically we talked about, the paragraph that talks about him being terminated for violations of internal rules and practices, that needs to be expunged. Uh, that question 7F um, uh, where it says that he, you know, the, the inferences that he violated regulatory rules of some kind, as, as, as the reasons that underlied his termination, that that be expunged. Um, and that as Mr. Gross um, just uh, just, just highlighted in his testimony, that it be changed to voluntary separation, and I do think that the FINRA panel has the authority to do that, in order to protect uh, Mr. Gross from this going forward, and protect his career uh, which he's entitled to that, that, that protection. Um, and um, and, and consistent with the settlement that he reached um, with HSBC, so for all of those reasons, that would be the, the least that Mr. Gross is seeking here. And, and believe, I believe that it's relief that he is, he is entitled to. |
| Peter Gillespie: | 46:39 | Mr. Rosenstein? Uh, is HSBC willing uh, if you can tell me this, is HSBC willing to reissue a U5 to fill in what might become a blank in the area for reason for separation? |
| Ira Rosenstein: | 47:00 | I don't believe that um, HSBC is permitted to do that. Um… |
| Peter Gillespie: | 47:04 | Yeah. |

| Ira Rosenstein: | 47:05 | …and my understanding is that the only way HSBC could, even if HSBC would amend um, it would not expunge. The um, original language would remain there, so that it would simply be, you'd have to click twice on the CRD, but you would still see the original language. Um, but I don't believe that um, HSBC um, could do that. Um, and um, again, we're not object—we're not, we're not opposing this as per our agreement. You know there's, we, there's, as we say in the answer, there's no admission of, of, of anything in, in the settlement agreement, so, so again, I, I don't think that we could, we could do that. Um, I think we have to leave it up to the panel to determine whether or not the circumstances justify um, an expungement. |
|---|---|---|
| Peter Gillespie: | 47:58 | I understand. |
| Ira Rosenstein: | 47:58 | Sorry. |
| Peter Gillespie: | 47:59 | No, you're fine. Thank you. |
| Ira Rosenstein: | 48:00 | Okay. |
| Peter Gillespie: | 48:00 | Um, I may be making a mountain out of a molehill uh, but uh, I'm just a little uncertain as to our authority to substitute a reason in place of that which we expunge. So gonna ask the parties to uh, give the panel uh, fifteen minutes or so for an executive session. Uh, we will leave the uh, uh, uh, Zoom conference. And uh, Ms. Dallier, are you still with us? |

| Crystal Dallier: | 48:37 | Yes. I am still here. Let me just pause the recording for a moment. |
| Ira Rosenstein: | 48:41 | Well I… |
| Peter Gillespie: | 48:42 | Okay. |
| Ira Rosenstein: | 48:42 | …may I make, I have one other uh, request… |
| Crystal Dallier: | 48:44 | Okay. |
| Ira Rosenstein: | 48:44 | …uh, if that's—this is Mr. Rosenstein—if that's okay with the panel? |
| Peter Gillespie: | 48:47 | I'm sorry, who is speaking? |
| Ira Rosenstein: | 48:49 | It's Ira Rosenstein speaking. |
| Peter Gillespie: | 48:51 | Yes sir, go ahead. |
| Ira Rosenstein: | 48:52 | Thank you. Um, the settlement agreement that is, been introduced, is confidential. And um, you know, it has a confidentiality provision in it. Um, and um, so I would ask that it not be made, while the panel, I have no objection to the panel um, reviewing it, I would ask that it not be made um, an official part of the record um, going forward. Um, um, because of the confidentiality provision that, that remains in it. Again, no objection to the panel being aware of it, I'm not withdrawing my, my, my uh, you know, objection to it or lack of objection to it, but uh, it is a confidential document. It does have um, uh, information that is private to both parties. Um, if that is not acceptable, I would ask at the very least that the uh, amounts |

paid be redacted in any version that remains in the uh, FINRA

uh, files.

| | | |
|---|---|---|
| Peter Gillespie: | 49:49 | Uh, yes sir, I was going to suggest that uh, during the break, you determine if you could redact a few paragraphs, and if so, which ones. That'd probably be the easiest way to deal with it. Uh, so, uh, we'll stand in recess for about uh, fifteen minutes Mr. Gross, you look like you were gonna burst, you okay? |
| Adam Gross: | 50:08 | I'm, no, I'm great. I'm terrific. |
| Peter Gillespie: | 50:10 | Okay. Okay. Uh… |
| Adam Gross: | 50:12 | Thank you. |
| Peter Gillespie: | 50:13 | …give us about fifteen minutes and uh, uh, we'll get back to you. |
| Adam Gross: | 50:20 | Yeah, [UI] |
| Peter Gillespie: | 50:20 | I see Mr. Gross is with us. |
| Crystal Dallier: | 50:23 | We're back on the record, Mr. Gillespie. |
| Peter Gillespie: | 50:25 | And Mr. Rosenstein, you're with us? |
| Ira Rosenstein: | 50:27 | I am. |
| Peter Gillespie: | 50:28 | Okay. Uh, all right. First as to the claimant, um, we've had several discussions. I think the panel understands our level of authority and how it relates to your request for relief. So unless you have something more to offer, Mr. Kaiser, uh, we're prepared to have the claimant close its presentation. |

| Daniel Kaiser: | 50:56 | Um, yeah, the only, the only thing I, I, I have to offer uh, is, is that we do believe that there's the authority to do what we've asked... |
| Peter Gillespie: | 51:06 | Yeah. |
| Daniel Kaiser: | 51:06 | ...I, yeah, um, and, and you know, we maintain that position and, and maintain that FINRA has done exactly that uh, on other occasions, so um, other than that... |
| Peter Gillespie: | 51:17 | That's great. |
| Daniel Kaiser: | 51:18 | ...we leave it in the panel's hands. |
| Peter Gillespie: | 51:20 | Thank you very much. Mr. Rosenstein? |
| Ira Rosenstein: | 51:23 | [Agree]. |
| Peter Gillespie: | 51:25 | Uh, yes, but as to the respondent and claimant's exhibit one? |
| Ira Rosenstein: | 51:29 | Yes. |
| Peter Gillespie: | 51:30 | Uh, we are prepared to accept a redacted version of that document, if you have one to submit to us. |
| Ira Rosenstein: | 51:41 | We will submit it um, I don't have it um, prepared where I'm standing right now, but I will have it, I could have it submitted to you um, uh, within the next hour or two. |
| Peter Gillespie: | 51:54 | Uh, Ms. Dallier, is it all right to receive a uh, hold the hearing open for an hour just for the purpose of receiving a substitute exhibit? |
| Crystal Dallier: | 52:02 | Of course. Definitely. |

| | | |
|---|---|---|
| Peter Gillespie: | 52:04 | Okay. And Mr. Kaiser, will you have any objection to whatever redactions the respondent may wish to make, since we've already reviewed the un-redacted version of, of the document? |
| Daniel Kaiser: | 52:16 | No objection, Chairman. |
| Peter Gillespie: | 52:18 | Okay, so by agreement of the party uh, the hearing will remain open for the sole purpose of the submission of a redacted copy of claimant's exhibit one, which will… |
| Ira Rosenstein: | 52:29 | Thank you, sir. |
| Peter Gillespie: | 52:29 | …which will then become the official document in place of anything else we've been given. |
| Ira Rosenstein: | 52:36 | Can um, I uh, put that on the portal? Or is that the best way to get it to uh, everybody uh, Ms. Dallier? |
| Crystal Dallier: | 52:43 | Yes, on the portal, please. |
| Ira Rosenstein: | 52:45 | Yes. |
| Peter Gillespie: | 52:46 | All right. Uh, gentlemen, on behalf of the parties and uh—behalf of the panel. You represent the parties, I really do understand. But on behalf of the panel, I wanna thank uh, both parties, the claimant and respondent uh, for your time, your preparation, your thoroughness. Uh, Mr. Gross, it was a pleasure to meet you, thank you for cooperating with the process. Uh, the… |
| Adam Gross: | 53:09 | Thank you. |
| Peter Gillespie: | 53:09 | …the parties are released. I would like the panel to stay with me for a few minutes. |

Daniel Kaiser:        53:15        Thank you, Chairman.

Peter Gillespie:      53:16        But the parties, the parties may go.

Daniel Kaiser:        53:18        Thank you, Chairman.

Ira Rosenstein:       53:20        Thank you.

**END OF AUDIO**