UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                :
ADAM GROSS,                                     :
                                                :    1:21-cv-08636 (PAC)
                          *Petitioner*,         :
                                                :    **ORDER & OPINION**
            -*against*-                         :
                                                :
HSBC Bank USA, N.A.,                            :
                                                :
                          *Respondent*.[1]      :
                                                :
------------------------------------------------------------------x

      For a second time, Petitioner Adam Gross seeks to vacate a Financial Industry Regulatory Authority ("FINRA") arbitration award. In the arbitration proceeding, Gross, a former employee of Respondent HSBC Bank, sought to expunge an allegedly inaccurate Form U-5. Earlier this year, the Court vacated the arbitration panel's initial unexplained award after failing to discern from the record any justification for denying Gross's unopposed claim. The panel has since submitted an explanation for its award. Because the Court finds no manifest disregard of law in this revised award, Gross's petition to vacate is **DENIED** and the award is **CONFIRMED**.

## **BACKGROUND**[2]

      Gross was terminated from his position as a Managing Director at HSBC in 2020. *See* Kaiser Decl., Ex. 1, ECF No. 22-1, at 3 (the "Revised Award"). HSBC, as a member of FINRA, was required to provide a Uniform Termination for Securities Industry Registration Form ("Form U-5") detailing the reasons for Gross's departure. *See* Vacatur Order at 1. The Form U-5 stated that Gross was terminated because he had violated internal policies. *See* Revised Award

---

[1] The Clerk of the Court is respectfully directed to amend the caption accordingly.

[2] A more detailed account of the facts is set forth in the Court's Order granting Gross's first petition to vacate. *See* ECF No. 17 at 1–2 (the "Vacatur Order").

1

at 3–4. More concretely, the Form U-5 alleged that Gross was "discharged as a result of using a prohibited electronic communication platform to communicate with a prospect regarding a hedge fund not approved for sale by the Firm." *Id.* at 3.

Gross petitioned a FINRA arbitration panel to expunge his allegedly inaccurate Form U-5. As a result of a private settlement agreement reached between HSBC and Gross, HSBC did not oppose the request that the Form U-5 be expunged. The panel held a hearing on Gross's petition in August 2021. At the hearing, consistent with the parties' agreement, HSBC offered no evidence to contest Gross's request. Nor did HSBC call witnesses or cross-examine Gross. Nonetheless, the panel disposed of Gross's claim in a one sentence award: "Claimant's claims are denied in their entirety." Kaiser Decl., Ex. 3, ECF No. 14-3, at 2 (the "Initial Award").

Gross petitioned this Court to vacate the Initial Award in late 2021. The Court granted the petition and remanded the case, concluding that it could not "discern, from the record, any basis on which the FINRA panel could have rested its decision." Vacatur Order at 6. Importantly, though, the Court did not express any view on the merits of Gross's claim, and noted the panel was free to reach the same decision on remand. *Id.* But given the uncontested presentation of the evidence at the hearing, a more robust explanation was necessary so the Court could "ensure there has been no manifest disregard of the law." *Id.*

On remand, the FINRA panel again concluded that Gross's claim was meritless. *See generally* Revised Award. This time, though, the panel's award included an explanation. In sum, the panel concluded that while testifying that he had not impermissibly communicated as defined in the Form U-5, Gross used the words "prospect" and "client" interchangeably, though the two words really meant different things. The panel further concluded that Gross's attempt to

2

characterize his behavior as "networking" was unconvincing and not supported by any evidence. *See id.* at 5–6.

Gross has now petitioned this Court to vacate the Revised Award. *See* ECF Nos. 21, 22, 23. He argues the Revised Award constitutes a manifest disregard of the law because it ignored the undisputed evidence he presented during the panel's hearing. *See* Mem. Supp. Pet. Vacate, ECF No. 23, at 2. HSBC has not filed a response to this second petition.

## DISCUSSION

### I. Applicable Legal Standards

FINRA arbitral awards are subject to judicial review under the Federal Arbitration Act (the "FAA"). *See Dishner v. Zachs*, No. 16 CIV. 04191 (LGS), 2016 WL 7338418, at *1 (S.D.N.Y. Dec. 19, 2016). Under the FAA, a losing party has three months following the issuance of an award to move to vacate or modify the award. 9 U.S.C. § 12; *see also Dalla-Longa v. Magnetar Cap. LLC*, 33 F.4th 693, 695 (2d Cir. 2022).

Consistent with the goals of arbitration, courts may vacate arbitration awards only in "narrow circumstances." *Aksman v. Greenwich Quantitative Rsch. LP*, 563 F. Supp. 3d 139, 150 (S.D.N.Y. 2021); *see also* 9 U.S.C. § 10(a) (listing grounds for vacatur). In addition to those grounds enumerated in the FAA, the Second Circuit has recognized that, as a "judicial gloss," vacatur may be appropriate where an award displays a "manifest disregard of the law." *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011) (citation omitted). But "manifest disregard" is a high bar: an award must stand if it offers "even a barely colorable justification" for the outcome. *Id.* at 452 (citation omitted). "A federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law." *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004). Instead, courts must respect the broad authority of

3

arbitrators to conduct fact finding and assess evidence. *See Moorning-Brown v. Bear, Stearns & Co.*, No. 99 CV 4130 (GBD), 2005 WL 22851, at *3 (S.D.N.Y. Jan. 5, 2005).

## II. The Revised Award Does Not Display "Manifest Disregard for The Law"

Unlike the Initial Award, the Revised Award discusses the merits of Gross's claim and explains, in detail, why he failed to meet his burden of proof. The Revised Award noted two reasons why Gross's claim lacked merit. Gross does not directly contest the first, and his arguments with respect to the second are unavailing.

*First*, at the hearing, Gross challenged the position taken on the Form U-5 that he had improperly "engag[ed] with a 'prospect' while he admittedly utilized a prohibited means to have discussions relating to a hedge fund not authorized to be sold by [HSBC]." Revised Award at 5. The panel found that Gross, in his testimony, had interchanged the terms "prospect" (a potential relationship) and "client" (a current relationship). According to the Revised Award, those concepts are distinct. Because Gross was not clear in the usage of those terms, and because Gross had the burden of proof, the panel found he had not shown, by a preponderance of the evidence, that the statement on the Form U-5 was false.[3]

Gross does not argue this distinction is irrelevant. Instead, he asserts that the Revised Award "failed" to "support its refusal to expunge Petitioner's U-5 of the false explanation for his termination." Second Pet. Vacate, ECF No. 21, at 5. Gross relies on *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 204 (2d Cir. 1998) for the proposition that vacatur is appropriate when arbitrators ignore uncontradicted evidence. *Halligan*, however, is inapposite. In *Halligan*, the

---

[3] The panel did not ask any questions during the arbitration hearing about this distinction between a "prospect" and a "client." Nor, as discussed, did the panel identify the distinction as a basis for the Initial Award. Thus, at the time Gross's first petition to vacate was before the Court, there was no basis—from either the record or from the award—to alert the Court that the panel had found this distinction to be important.

4

terminated employee presented significant evidence supporting her claim of discrimination. That evidence included contemporaneous notes and testimony from numerous witnesses. Gross called no witnesses other than himself, and the panel made a credibility determination that his testimony was unconvincing.[4] Further, in *Halligan*, the employer conceded that the terminated employee's record was "not so unsatisfactory as to justify discharge." *Id.* at 203. By contrast, HSBC has not conceded the Form U-5 is incorrect; it has simply declined to take a position on whether the Form U-5 should be expunged. *See* HSBC's Resp. First Pet. Vacate, ECF No. 16, at 2. HSBC never abandoned its rationale for firing Gross. So, its statements about Gross's firing—which contradict his own account of the facts—were part of the evidentiary record at the hearing. *See* Revised Award at 5. Gross, in the end, had the burden to disprove the veracity of the Form U-5. *See id.* And "[e]ven assuming the testimony and evidence in question were unrebutted, that does not obligate the arbitrator to find them an adequate and reliable basis for an award." *Oldcastle Precast, Inc. v. Liberty Mut. Ins. Co.*, 838 F. App'x 649, 651 (2d Cir. 2021) (summary order). That is because "[i]t is the role of the arbitrators to make factual findings, weigh evidence, and assess the credibility of witnesses." *Moorning-Brown*, 2005 WL 22851, at *3. The finding that Gross's loose use of the two terms "prospect" and "client" undermined his credibility is the type of finding an arbitrator is entitled to make, and it is one the Court must not unsettle.

*Second*, during the FINRA proceedings, Gross attempted to distinguish between "networking" and "soliciting," essentially conceding he was engaged in the former but not the latter. Yet it is not entirely clear to the Court—or, apparently, to the FINRA panel—that this

---

[4] Notably, Gross had the opportunity to call witnesses at his hearing. He declined to do so, counsel suggests, because "[i]t would be virtual malpractice to call a series of witnesses that Mr. Gross has less control of and roll the dice on what they may testify about." Mem. Supp. Pet. Vacate, ECF No. 23, at 5. The statement that calling witnesses would amount to rolling the dice seems to undercut Gross's entire argument that his case was clear-cut.

distinction mattered. The Form U-5 stated that Gross was discharged for "using a prohibited electronic communication platform to *communicate* with a prospect regarding a hedge fund not approved for sale by the Firm." Revised Award at 3 (emphasis added). The Form U-5 does not allege that Gross "solicited" any business. Rather, it says that he "communicated" with a prospect in violation of company policy. So, the discussion of the differences between "networking" and "soliciting" ultimately had no bearing on the meaning of the Form U-5. *See id.* at 6 (noting the Form U-5 "spoke only of using the prohibited means to 'communicate with a prospect.' The concept of 'networking' was first introduced by Claimant."). Even assuming that difference would have been dispositive, the arbitration panel found that Gross "failed to provide proof as to the meaning of" the term "networking." *Id.* The panel thus concluded that Gross's "own, individual" characterization of his activities was not supported by sufficient evidence to expunge his Form U-5. *Id.* It is not this Court's role to weigh in on whether the panel's interpretation of that characterization was correct or incorrect. *See Bus. Credit & Cap. II LLC v. Neuronexus, Inc.*, No. 1:18-CV-03374 (ALC), 2019 WL 1426609, at *4 (S.D.N.Y. Mar. 29, 2019) (a court "cannot reassess the evidentiary record" created during the arbitration proceedings). The fact that the FINRA panel did not give weight to the difference between "networking" and "solicitation" does not rise to the high level of egregiousness required to vacate the award. It was well within bounds for the panel to conclude that the distinction was not enough to show that the Form U-5 was wrong.

The panel determined that Gross was required to show, by a preponderance of the evidence, that the information on the Form U-5 was false. None of the panel's findings reach the high bar of straining credulity. *See Schwartz*, 665 F.3d at 452. Thus, the panel's conclusion that Gross failed to meet his burden of proof must not be disturbed.

6

### III. The Award Is Confirmed

"An arbitration award that is not vacated or modified, may be confirmed by a court." *Banco de Seguros del Estado v. Mut. Marine Offs., Inc.*, 257 F. Supp. 2d 681, 685 (S.D.N.Y. 2003). "[C]onfirmation of an arbitration award is 'summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (citation omitted). An arbitration award "should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *Id.* In other words, only a "barely colorable" justification for an award is necessary. *See id.* As discussed, the Revised Award sufficiently explains the panel's rationale. For that reason, it easily meets the "barely colorable" standard and the Court will confirm the award.

### CONCLUSION

Because Gross has not shown that the panel acted in manifest disregard of the law, the Court **DENIES** Gross's petition to vacate the FINRA arbitration award. Further, the court **CONFIRMS** the FINRA panel's award. The Clerk of the Court is directed to enter judgment in HSBC's favor and close the case.

Dated: New York, New York  
July 27, 2022

SO ORDERED

*[signature]*

HONORABLE PAUL A. CROTTY  
United States District Judge